## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHNNY F. SEVIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-321-FHS-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Johnny F. Sevier requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on November 24, 1959, and was fifty-three years old at the time of the administrative hearing (Tr. 32, 158). He completed the twelfth grade, and has worked as a lumber grader and laborer (Tr. 25, 182). The claimant alleges he has been unable to work since July 15, 2009, due to rheumatoid arthritis, scoliosis, knots in his hands/fingers, emphysema, being double-jointed in his knees and elbows, and GERD (Tr. 181).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 on April 15, 2011, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on April 8, 2011. His applications were denied. ALJ James Bentley conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated February 22, 2013 (Tr. 17-26). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found the claimant retained the residual functional capacity ("RFC") to perform medium work as defined by 20 C.F.R. §§ 404.1567(c), 416.967(b), except that he may only occasionally

kneel, crouch, and crawl; and never climb ladders, ropes, and scaffolds. Additionally, he found that the claimant requires the ability to alternate between sitting and standing at his work station, and that he should avoid exposure to hazards such as unprotected heights, and dangerous moving machinery, but that he was able to avoid ordinary hazards such as doors ajar, boxes on the floor, or approaching vehicles or people (Tr. 21). The ALJ concluded that the claimant could not return to his past relevant work but that he was nevertheless not disabled because there was work he could perform in the economy, *e. g.*, mail room clerk, marker, and garment sorter (Tr. 26).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze the medical opinion of his treating physician, Dr. Amelia C. Lewis, M.D.; (ii) by failing to account for his nonsevere mental impairment; and (iii) by improperly assessing his credibility. The undersigned Magistrate Judge finds that the ALJ did fail to properly analyze Dr. Lewis's opinion, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of lumbar disk bulge with low back pain, bilateral knee secondary to derangement, and neck pain associated with disk herniation, as well as the nonsevere impairments of GERD, emphysema, insomnia, and anxiety (Tr. 19-20). The relevant medical evidence reveals that Dr. Lewis has treated the claimant approximately eight years. Her treatment notes from that time period reflect, *inter alia*, continued complaints of pain, and pain management treatment (Tr. 280-318, 371-420). On September 12, 2011, she stated that

the MRI of his neck and low back "very abnormal and show a good reason for the pain he is having" (Tr. 410). On November 29, 2011, she noted that he needed a letter in support of his disability application and to be relieved from jury duty, and she stated that he was unable to sit for long periods of time (Tr. 408). On April 4, 2011, Dr. Lewis ordered MRIs of the lumbar and cervical spines. The lumbar spine MRI revealed a disc bulge at L3-4 and L5-S1, and small central disc herniation at the L4-5 level which exerts minimal mass effect on the thecal sac at that level (Tr. 290). The cervical spine MRI revealed posterior osteophytosis at the C5-6 and the C6-7 levels which narrow both neural foramen to a mild degree, a relatively well-preserved spinal canal for which clinical correlation was suggested, small central disc herniation of the C3-4 intervertebral discs with no significant spinal canal stenosis seen, and sinus opacification for which clinical correlation was also recommended (Tr. 294) Additionally, Dr. Lewis completed a physical Medical Source Statement (MSS), in which she indicated that the claimant could lift/carry five pounds frequently and ten pounds occasionally, stand/walk less than two hours out of an eight-hour workday and for thirty minutes continuously, sit less than two hours out of an eight-hour workday and continuously, and that he was required to lie down during the normal workday to manage pain (Tr. 422-423). She indicated that he could never climb, kneel, and crawl; and only occasionally balance, stoop, crouch; but he could frequently reach, handle, finger, and feel (Tr. 423). She also noted the claimant's reports that he could not operate machinery, or handle temperature extremes, dust fumes, and humidity (Tr. 423). In support, she referred to the claimant's extreme pain upon attempting to flex his back, inability to turn his neck without pain, and the MRIs of his

cervical and lumbosacral spines (Tr. 423). She stated that her MSS applied from April 4, 2011 through the date she completed the form, October 3, 2012 (Tr. 423).

Further MRIs conducted in May 2013 reveal C5-6 and C6-7 degenerative disc disease with disc bulges, spondylosis and stenosis, with moderately severe bilateral foraminal stenosis at C5-6 and moderate left foraminal stenosis at C6-7, as well as small central disc herniation at C3-4 with minimal canal stenosis, probable small perineural cyst at T1-2 in the left neural foramen, sphenoid sinus inflammatory disease, and possibly partially empty sella (Tr. 427). The MRI of the left upper extremity revealed partial-thickness articular surface tear of the infraspinatus tendon at the insertion to the greater tuberosity, multiloculated cystic fluid collection inferior to the glenoid, either a ganglion or paralabral cyst associated with labral tear although no definite labral tear was seen, mild superior migration of the humeral head, and degenerative changes of the humeral head and acromioclavicular joint (Tr. 428).

Additionally, Dr. Mitsi Faubion, D.O. and Dr. Ed Ellis, M.D., treated the claimant at the Pushmataha Family Medical Center, for chronic pain among other impairments. Dr. Faubion's treatment notes reflect that the claimant repeatedly reported neck pain, low back pain, and knee pain, and findings frequently reflected that the neck had some degree of restricted range of motion, paraspinal muscle spasm of the left side, and tenderness upon palpation in the medial jointline and medial collateral ligament of the left knee (Tr. 272-279, 320). Dr. Ellis stated on August 18, 2011 that he saw no objective joint or neurological findings to account for the claimant's pain, but that he did not doubt the

presence of pain, and noted he had been off his pain medications for a few days and was not experiencing withdrawal but was experiencing pain (Tr. 353).

The following month after one of Dr. Faubion's treatment records noting the claimant's range of motion in the neck restricted in all directions, Dr. Ronald Schatzman completed a consultative examination of the claimant in which he discussed the claimant's knee pain and low back pain, but not the neck pain aside from a form on which he circled a number indicating full range of motion (Tr. 322-325).

State reviewing physician Dr. Luther Woodcock completed a Physical Residual Functional Capacity Assessment on July 21, 2011, in which he found that the claimant could perform the full range of medium work (Tr. 344-350). Dr. Woodcock summarized the evidence available at the time of his assessment, but it was completed over a year prior to Dr. Lewis's October 3, 2012 MSS (Tr. 344-350, 423).

Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ 404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those

factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted]. Likewise, the opinions of physicians such as consultative examiners must be evaluated for the proper weight. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider [the *Watkins*] factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).

    The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. In this case, the

ALJ summarized Dr. Lewis's treating notes, and acknowledged her MSS but assigned it "little weight" stating, "[a]lthough she is a treating source with a long history with this claimant, her own clinical examinations do not support the extreme functional limitations upon which she opined. Moreover, her opinion is not supported by the clinical findings of other treating sources such as Dr. Ellis and Dr. Faubion as well as the diagnostic studies" (Tr. 24). Instead, he summarized the notes from Dr. Faubion and Dr. Ellis without assigning them any weight, then gave Dr. Woodcock's opinion "significant weight by assigning the [RFC] herein" (Tr. 23). This was an improper assessment where, as here, the ALJ appeared to adopt most of the state physician's findings but failed to explain why the claimant's documented reduced range of motion (noted by every treating physician) and continued back pain (with supporting MRIs) nevertheless enabled him to perform medium work, with its attendant total sitting/standing requirements and lift/carry requirements in an eight-hour workday. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**